IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GREGORY J. CARLSON,

                Plaintiff,

v.                                                                           ORDER

CAROLYN W. COLVIN,                                        16-cv-2-jdp
Acting Commissioner of Social Security,

                Defendant.

---

Plaintiff Gregory J. Carlson seeks judicial review of a final decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, finding him not disabled within the meaning of the Social Security Act. The court heard oral argument on August 30, 2016. For reasons explained during oral argument and summarized here, the court will deny Carlson's motion for summary judgment and affirm the Commissioner's decision.

In February 2013, Carlson applied for disability insurance benefits, citing hepatitis C, depression, fatigue, and arthritis in his knee. R. 69-70.[1] Carlson's health has deteriorated since that time. But because Carlson applied for disability insurance benefits, the ALJ needed to determine whether Carlson was disabled prior to his date last insured (DLI), December 31, 2009. *See Carter v. Colvin*, 556 F. App'x 523, 527 (7th Cir. 2014), *reh'g denied*, (July 17, 2014), *cert. denied*, 135 S. Ct. 996 (2015). Keeping Carlson's DLI in mind, the ALJ's opinion is well supported and paints a consistent picture of Carlson's condition. Carlson raises three issues on appeal, but he has not identified a reason to remand.

---

[1] Record cites are to the administrative transcript, located at Dkt. 10.

First, Carlson contends that the ALJ afforded the state agency consultants' opinions great weight but deviated—without explanation—from their determination that objective medical evidence substantiated Carlson's statements regarding his symptoms. This, Carlson argues, created a conflict within the ALJ's decision. When determining Carlson's residual functional capacity (RFC), the ALJ considered opinions from two state agency consultants, Drs. Zuniga and Torello. The ALJ gave these opinions great weight (both opined that Carlson was able to perform a full range of medium work). R. 24. The ALJ adopted the opinions—which included favorable credibility determinations—but then turned around and discounted Carlson's credibility, allegedly without sufficient explanation.

But the court is not persuaded that Carlson has identified an actual conflict within the ALJ's decision. The most natural reading of the state agency consultants' opinions is that even crediting Carlson's subjective complaints, they did not establish that he was totally disabled by the end of 2009. There is nothing inconsistent about the state agency consultants' credibility determination and their ultimate determination that Carlson was not disabled prior to December 31, 2009. The ALJ, however, received a new set of subjective complaints to evaluate: at the hearing, Carlson testified that he had experienced more severe symptoms that dated back to 2008-2009. Unlike the state agency consultants, the ALJ had to contend with new complaints of disabling pain that Carlson testified reached all the way back to before his DLI. The ALJ's credibility determination is not in conflict with his decision to give great weight to the state agency consultants' opinions; the ALJ and the state agency consultants considered different statements.

And that brings us to Carlson's second issue: Carlson separately challenges the ALJ's credibility determination. The ALJ determined that although Carlson's medically

determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. R. 24. The ALJ acknowledged that Carlson was diagnosed with degenerative joint disease of the left hip during the period at issue; however, Carlson's statements regarding disabling hip pain during that time were not entirely credible because his condition worsened *years* after the DLI. *Id.* Carlson underwent hip replacement surgery nearly three years later. *Id.* Before the DLI, Carlson sought minimal treatment, and medical attention that he *did* receive during the period at issue revealed largely normal results (i.e., his pre-op examination before his hernia surgery). *Id.* Examination revealed that he had a normal gait, full weight-bearing capabilities, and no pain. *Id.* Doctors told him to stop running. *Id.*

The court "will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), *as amended*, (Aug. 20, 2014), *reh'g denied*, (Oct. 10, 2014). The court affords the ALJ's credibility determination deference because the ALJ is in the unique position to hear, see, and assess witnesses. *Id.* at 815 (citing *Shideler v. Astrue,* 688 F.3d 306, 311 (7th Cir. 2012)). However, the credibility analysis must "be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Here, the ALJ explicitly discounted Carlson's statements regarding the severity of his symptoms in 2008 and 2009 only after comparing his hearing testimony to contemporaneous medical records.

And as far as the ALJ's reference to Carlson's activities of daily living (ADLs) goes, it does not appear that the ALJ misused the information to draw unfair inferences about Carlson's ability to perform full-time work. The Seventh Circuit has "repeatedly warned

3

against equating the activities of daily living with those of a full-time job." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). But the ALJ referenced Carlson's ADLs as evidence that his hip pain was probably not as severe as he claimed. The ALJ did not conclude that Carlson could engage in full-time employment based on his ability to perform certain activities. Rather, the ALJ determined that the fact that Carlson was able to perform home improvement repairs for several hours at a time, multiple days per week between the alleged onset date and the DLI undermined his statements regarding the severity of his hip pain. The record does not demonstrate that the ALJ's credibility determination was patently wrong.

Carlson's third and final argument is also unpersuasive. Carlson contends that the ALJ did not consider his symptoms' aggregate effect. At step two, the ALJ noted that Carlson claimed to be disabled as a result of hepatitis C with fatigue, a right inguinal hernia, and right hip degenerative joint disease. R. 20. But medical records demonstrated that Carlson's hepatitis was stable with no evidence of liver failure, and in September 2009, Carlson *denied* chronic fatigue. R. 20-21. The ALJ went on to explain that Carlson's hernia surgery was successful and that his right hip was largely asymptomatic. R. 21. The ALJ concluded that no objective medical evidence demonstrated that any of these impairments caused Carlson more than the minimal limitations. *Id.* The ALJ also explained that Carlson's MRSA did not produce any ongoing symptoms, *id.*, and that his depression did not restrict his ADLs, did not limit his social functioning, did not limit his concentration, persistence, or pace, and did not produce any episodes of decompensation. R. 22.

Carlson does not take issue with how the ALJ evaluated each of his non-severe impairments, and he does not argue that they were more limiting than the ALJ determined. Nor has Carlson identified any evidence in the record that demonstrates that the combined

effect of his impairments was something more than the ALJ recognized. The court will affirm the ALJ's decision on this issue.

One final point. Even if the ALJ were overly optimistic in finding that Carlson was capable of performing a full range of medium work as of the DLI, he offered an alternative step five finding. Even if Carlson's RFC included additional limitations—including no climbing ramps, stairs, ladders, ropes, or scaffolds; no more than occasional balancing due to left hip degenerative joint disease or hernia; no concentrated exposure to unprotected heights, hazards, or moving machinery; and limited to simple, repetitive tasks and no fast-paced work—Carlson would be able to perform jobs that exist in significant numbers in the national economy. R. 26.

## ORDER

IT IS ORDERED that the decision of Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Gregory J. Carlson's application for disability insurance benefits is AFFIRMED and plaintiff's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered September 9, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge